UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAN ADMINISTRATOR OF THE CHEVRON CORPORATION RETIREMENT RESTORATION PLAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ANNE MINVIELLE, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-07063-TSH<br><br>**ORDER RE: MOTION TO LIFT STAY**<br><br>Re: Dkt. No. 76 |

## I.   INTRODUCTION

Pending before the Court is Defendant and Cross-Claimant Martin Byrnes' Motion to Lift Stay. ECF No. 76. Defendants Anne Minvielle and Leon Minvielle (the "Minvielles") filed an Opposition (ECF No. 77), and Byrnes filed a Reply (ECF No. 78). On October 31, 2023, the Minvielles filed a Sur-Reply (ECF No. 82), and on November 6, 2023, Byrnes filed a Reply to the Sur-Reply (ECF No. 84). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** the motion for the following reasons.

## II.   BACKGROUND

Plaintiffs Plan Administrator of the Chevron Corporation Retirement Restoration Plan and Plan Administrator of the Chevron Corporation Long-Term Incentive Plan (collectively, "Chevron") commenced this interpleader action on October 9, 2020. ECF No. 1.

Margaret Broussard was a Chevron employee. ECF No. 59 ¶ 3. Defendant Anne Minvielle was Broussard's sister. *Id.* ¶ 6. Anne Minvielle resides in Louisiana with her husband, Defendant Leon Minvielle. *Id.* ¶ 8. Defendant Martin Byrnes was married to Broussard at certain times during her employment with Chevron. *Id.* ¶ 9. He resides in France. *Id.* ¶ 10.

1    Broussard died on January 21, 2019. *Id.* ¶ 5. During her work with Chevron, she earned a
2    benefit under the Retirement Restoration Plan ("RRP"). *Id.* ¶ 17. She also was awarded non-
3    qualified stock options under the Long-Term Incentive Plan ("LTIP") (collectively with RRP, the
4    "Plans"). *Id.* ¶ 20. The Plans permit a participant to designate a beneficiary to receive outstanding
5    benefits in the event of the participant's death. *Id.* ¶¶ 30, 31.

6    On January 12, 2017, Chevron received a form purporting to name Anne Minvielle as the
7    sole beneficiary of benefits owed to Broussard under the Plans. *Id.* ¶ 35. On March 17, 2017,
8    Broussard also provided to Chevron a document represented as a post-nuptial agreement between
9    Broussard and Byrnes. *Id.* ¶ 38. That agreement included division of Broussard's benefits under
10   the Plan. *Id.*

11   Byrnes and Anne Minvielle both contend that they are the rightful recipients of the benefits
12   owed under the Plans. Byrnes argues that he is entitled to the benefits under the Plans as
13   Broussard's surviving spouse. ECF No. 61 ¶ 35(b). Byrnes also alleges that the form received by
14   Chevron purporting to designate Anne Minvielle as beneficiary is void because the form itself was
15   improper, or, alternatively, it was a forgery, or, alternatively, Broussard did not have the mental
16   capacity or was unduly influenced by Anne Minvielle to sign it. ECF No. 61 ¶¶ 35(d)-(g).

17   Chevron could not determine whether Anne Minvielle or Byrnes was the proper
18   beneficiary, and thus commenced this action. ECF No. 59 ¶ 43. Chevron seeks, in part, a
19   determination as to the proper beneficiary to any benefits owed with respect to Broussard under
20   the Plans, namely: 1) five annual installment payments owed under the RRP; 2) shares held in a
21   Morgan Stanley account resulting from Broussard's January 2020 cashless exercise of 2,600
22   options; 3) outstanding LTIP option awards to Broussard; and 4) a cash payment resulting from
23   the 2019 Performance Share Units payment held following Broussard's death. *Id.* at 8-9. On July
24   26, 2021, this Court discharged Chevron from this action. ECF No. 57.

25   On June 3, 2021, the Minvielles filed a motion requesting the Court abstain and dismiss
26   this proceeding or stay the proceeding pending determination of a probate case to determine
27   allocation of Broussard's estate filed in Louisiana state court. ECF No. 49.

28   Prior to commencement of this interpleader action by Chevron, Leon Minvielle, as

United States District Court
Northern District of California

2

executor of Broussard's estate, had filed a Petition to Admit Notarial Testament to Probate and Confirmation of Independent Executor in Louisiana Civil District Court for the Parish of Orleans. ECF No. 49-6. On September 16, 2020, he filed with the Louisiana court a Petition for Possession and for Declaratory Judgment. ECF No. 49-9. The Petition for Possession and for Declaratory Judgment sought, in part, a declaratory judgment as to ownership of Broussard's Chevron benefits. ECF No. 49-9 at 5. On March 5, 2021, Byrnes filed an Answer to Petition for Possession and for Declaratory Judgment, Intervention and Reconventional Demand. ECF No. 49-10. Byrnes alleged in the Louisiana action that Broussard did not have the ability to obtain or prepare the beneficiary designation form at the time that of her alleged signature, and that the form's execution was an example of Anne Minvielle's undue influence. ECF No. 49-10 ¶ 47. Byrnes also alleged that the Louisiana court did not have jurisdiction to determine entitlement to Broussard's Chevron retirement benefits. ECF No. 49-10 ¶ 14.

On September 30, 2021, this Court ordered that the present action be stayed pending final disposition of the previously filed and pending parallel Louisiana suit. ECF No. 73. In explaining its ruling, the Court stated in the hearing on the Minvielle's motion:

> It looks to me like there is or there may be an ERISA claim for benefits pending in the Louisiana state court. And I understand that Mr. Byrnes may have some jurisdictional challenges to certain aspects of what the state court is entitled to hear.
>
> But I guess my thought is that I should let the state court decide what is in front of it and decide what it has jurisdiction over and then make its findings of fact, and then those will have whatever collateral estoppel effect they may have in the federal proceeding.
>
> But it seems ill-advised for this Court to charge ahead and determine issues that seem to overlap, at least in part, with what the state court may have in front of it.

ECF No. 75, Transcript of September 30, 2021 hearing, 4:2-14. The Court went on to say: "I think it would be more procedurally proper and efficient for the state court to decide what it has the power to decide; and then, if it agrees with you and says, 'No, I can't decide these claims,' then you can just file a motion with me and say, 'Lift the stay.' But I would first like the state court to express its view about what it has in front of it and what it has the power to decide." *Id.* at 8:4-11.

3

1  On July 28, 2023, the parties filed a consent judgment in the Louisiana action, agreeing that Broussard and Byrnes' post-nuptial agreement, dated January 19, 2017, was not an enforceable contract and did not constitute an agreement as to disposition of Byrnes and Broussard's assets. ECF No. 76, Ex. B.

On July 31, 2023, the Louisiana Civil District Court Parish of Orleans determined that it did not have subject matter jurisdiction to determine claims related to Broussard's LTIP or RRP. ECF No. 76, Ex. A. The Louisiana court determined that it did have jurisdiction over money distributed from Broussard's Chevron Retirement Plan and Investment Plan. *Id.*.

### III. LEGAL STANDARD

This Court previously ordered a stay pursuant to *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), as well as its inherent authority. ECF No. 75 8:14-15 (stating the basis for the stay was "both *Colorado River* and the Court's inherent power."). The Ninth Circuit has recently clarified its position on a district court's inherent authority to stay a case pursuant to its docket management powers. *Ernest Bock, LLC v. Steelman*, 76 F.4th 827, 842 (9th Cir. 2023). Formerly, there was some division at the district court level over a court's inherent authority, pursuant to *Landis v. N. Am. Co.*, 299 U.S. 248 (1936), to stay its own action where there were simultaneous and related federal and state actions. *See Landis*, 299 U.S. at 254 ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."). The Ninth Circuit has now held that "*Colorado River* factors control whether a stay can issue in favor of parallel state proceedings." *Ernest Bock, LLC*, 76 F.4th at 843; *see id*. ("A docket management stay may not issue in favor of parallel state proceedings if the *Colorado River* factors do not support a stay."). As such, to the extent the Court previously relied upon its own inherent authority to control its docket, it now evaluates whether to lift the stay based solely upon applying the *Colorado River* factors.

Under *Colorado River*, there are eight factors guiding whether a district court should stay a proceeding:

4

> (1) which court first assumed jurisdiction over any property at stake; (2) the inconvenience of the federal forum; (3) the desire to avoid piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether federal law or state law provides the rule of decision on the merits; (6) whether the state court proceedings can adequately protect the rights of the federal litigants; (7) the desire to avoid forum shopping; and (8) whether the state court proceedings will resolve all issues before the federal court.

*Montanore Mins. Corp. v. Bakie*, 867 F.3d 1160, 1165–66 (9th Cir. 2017), *as amended on denial of reh'g and reh'g en banc*(Oct. 18, 2017) (quoting *Colorado River*, 424 U.S. at 978–79). "Some factors may not apply in some cases, and '[a]ny doubt as to whether a factor exists should be resolved against a stay' or dismissal." *Id.* (quoting *Seneca Ins. Co. v. Strange Land, Inc.*, 862 F.3d 835, 842 (9th Cir. 2017)). "[A] stay of federal litigation in favor of state court proceedings 'is the exception, not the rule.'" *Ernest Bock, LLC*, 76 F.4th at 836 (quoting *Colorado River*, 424 U.S. at 813). "'Only the clearest of justifications will warrant' a stay." *Id* (quoting *Colorado River*, 424 U.S. at 819).

## IV. DISCUSSION

While *Colorado River* discusses eight factors to aid in evaluating whether to grant, or in this instance lift, a stay, the Court finds that the eighth factor —"whether the state court proceedings will resolve all issues before the federal court" — is dispositive here. "This factor asks about the similarity between the state and federal suits." *United States v. State Water Res. Control Bd.*, 988 F.3d 1194, 1203 (9th Cir. 2021). "'Though exact parallelism . . . is not required, substantial similarity of claims is necessary before abstention is available.'" *Id.* (quoting *Seneca Ins.*, 862 F.3d at 845 (internal quotation marks omitted)). The Ninth Circuit has repeatedly, and recently, "emphasized that a *Colorado River* stay is inappropriate when the state court proceedings will not resolve the entire case before the federal court." *Id.* at 1204. "If there is any substantial doubt as to" whether "the parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties . . . it would be a serious abuse of discretion to grant the stay or dismissal at all." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983). "[T]he decision to invoke *Colorado River* necessarily contemplates that the federal court will have nothing further to do in resolving any substantive part of the case,

5

1  whether it stays or dismisses." *Id*.

2  In initially finding that a stay was merited, this Court stated: "I think it would be more
3  procedurally proper and efficient for the state court to decide what it has the power to decide; and
4  then, if it agrees with you and says, 'No, I can't decide these claims,' then you can just file a
5  motion with me and say, 'Lift the stay.'" ECF No. 73 8:4-11.  That is now exactly the
6  circumstance before the Court.  The Louisiana court has concluded that it lacks subject matter
7  jurisdiction to determine the rightful beneficiary of the Plans.  ECF No. 76, Ex. A.  As such, this
8  Court now finds that there is "substantial doubt" that the Louisiana proceedings will resolve the
9  entire case at-issue here.  *See Holder v. Holder*, 305 F.3d 854, 859 (9th Cir. 2002) ("In this
10 Circuit, the narrow *Colorado River* doctrine requires that the pending state court proceeding
11 resolve all issues in the federal suit.").

12 The Minvielles argue that there remain overlapping factual issues because the Louisiana
13 Court must determine Broussard's capacity as to her disputed February 8, 2017 will ("2017
14 Will"), and the evidence related to competence and undue influence presented in this proceeding
15 will be identical to that in the Louisiana proceeding.  ECF No. 77 at 15.  They argue that it is more
16 logical to continue to permit the Louisiana court to litigate these issues in relation to the 2017
17 Will, and then determine "what, if any, collateral estoppel effect that that fact finding might have
18 as to any of the retirement plans that might come back to this Court for final adjudication." *Id.* at
19 5.  This argument that there might be overlapping factual determinations that might have collateral
20 effect does not provide sufficient basis to continue the stay under *Colorado River*.  A district court
21 should stay a proceeding under *Colorado River* "only if it has 'full confidence' that the parallel
22 state proceeding will end the litigation." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d
23 908, 913 (9th Cir. 1993) ((quoting *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S.
24 271, 277 (1988)).  Even the Minvielles appear tentative to argue that a determination in the
25 Louisiana court regarding Broussard's capacity or any undue influence in executing the 2017 Will
26 definitively will resolve questions of capacity and undue influence in this proceeding and thus that
27 determinations in the Louisiana court will end this litigation.

28 Further, depending on the Louisiana case's outcome, not all the claims raised before this

Court will be resolved in the Louisiana court even if there is collateral estoppel effect regarding capacity and undue influence.  If the Louisiana court determines that Broussard had mental capacity at the time of the 2017 Will and this Court finds the Louisiana determination has collateral estoppel effect, this Court will still have to determine whether the January 2017 beneficiary documentation was a forgery and if it was legally valid form.  "When one possible outcome of parallel state court proceedings is continued federal litigation, we find a 'substantial doubt' that the state court action will provide a 'complete and prompt resolution of the issues,' because the federal court may well have something 'further to do.'"  *Ernest Bock, LLC*, 76 F.4th at 841 (quoting *Moses H. Cone*, 460 U.S. at 28).  The Minvielles argue in their sur-reply that Byrnes' forgery claim, as well as his claim that the incorrect form was used, are without merit.  ECF No. 82 at 2.  However, the Court declines at this juncture to decide the merits of those claims.[1]

"Since we find that there exists a substantial doubt as to whether the state court proceedings will resolve all of the disputed issues in this case, it is unnecessary for us to weigh the other factors included in the *Colorado River* analysis."  *State Water Res. Control Bd.*, 988 F.3d at 1208 (quoting *Intel Corp.*, 12 F.3d at 913 n.7).

### V.  CONCLUSION

For the reasons stated above, the Court **GRANTS** Byrnes' Motion to Lift Stay.  The Court **FURTHER ORDERS** the parties to appear for a case management conference on December 21, 2023 at 10:00 a.m. by phone at 1-888-684-8852, passcode: 2925506.  The parties shall file a joint case management conference statement by December 14, 2023.

**IT IS SO ORDERED.**

Dated:  November 9, 2023

THOMAS S. HIXSON
United States Magistrate Judge

---

[1] The parties extensively briefed issues related to the burden of proof for testamentary capacity and undue influence, including a request for judicial notice by Byrnes for an article in California Trusts and Estates Quarterly entitled "Undue Influence: Pressure Brought to Bear Directly on the Burden of Proof."  ECF No. 85.  The Court does not rely upon those parties' arguments in making its determination here, and thus **DENIES** as moot Byrnes' request.

7