UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAN ADMINISTRATOR OF THE CHEVRON CORPORATION RETIREMENT RESTORATION PLAN, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>ANNE MINVIELLE, MARTIN BYRNES and LEON MINVIELLE as the Executor of the Estate of Margaret Broussard,<br><br>    Defendants.<br><br>MARTIN BYRNES,<br><br>    Counterclaimant,<br><br>    v.<br><br>ANNE MINVIELLE and LEON MINVIELLE as the Executor of the Estate of Margaret Broussard,<br><br>    Counterdefendants. | Case No. 20-cv-07063-TSH<br><br>**ORDER DENYING MOTION TO CHANGE VENUE**<br><br>Re: Dkt. No. 90 |

## I.    INTRODUCTION

Chevron Corporation commenced this interpleader action to determine the proper beneficiary of two Chevron benefit plans under which its former employee, Margaret Broussard, accrued benefits. Defendants and Counterdefendants Anne and Leon Minvielle now move to change venue to the Western District of Louisiana pursuant to 28 U.S.C. § 1404(a). ECF No. 90. Defendant and Counterclaimant Martin Byrnes filed an Opposition (ECF No. 95) and the Minvielles filed a Reply (ECF No. 96). The Court finds this matter suitable for disposition without oral argument and **VACATES** the February 22, 2024 hearing. Civil L.R. 7-1(b). Having

considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** the motion.

## II.   BACKGROUND

### A.   Factual Background

Margaret Broussard was a Chevron employee. Sec. Am. Compl. ¶ 3, ECF No. 59. Defendant Anne Minvielle, who was Broussard's sister, resides in Louisiana with her husband, Defendant Leon Minvielle. *Id.* ¶¶ 6, 8. Defendant Martin Byrnes was married to Broussard at certain times during her employment with Chevron. *Id.* ¶ 9. He resides in France. *Id.* ¶ 10.

Broussard died on January 21, 2019. *Id.* ¶ 5. During her work with Chevron, she earned a benefit under the Retirement Restoration Plan ("RRP"). *Id.* ¶ 17. She also was awarded non-qualified stock options under the Long-Term Incentive Plan ("LTIP") (collectively with RRP, the "Plans"). *Id.* ¶ 20. The Plans permit a participant to designate a beneficiary to receive outstanding benefits in the event of the participant's death. *Id.* ¶¶ 30, 31.

On January 12, 2017, Chevron received a form purporting to name Anne Minvielle as the sole beneficiary of benefits owed to Broussard under the Plans. *Id.* ¶ 35. On March 17, 2017, Broussard also provided to Chevron a document represented as a post-nuptial agreement between Broussard and Byrnes. *Id.* ¶ 38. That agreement included division of Broussard's benefits under the Plan. *Id.*

Byrnes and Anne Minvielle both contend that they are the rightful recipients of the benefits owed under the Plans. Byrnes argues that he is entitled to the benefits under the Plans as Broussard's surviving spouse. Answer ¶ 35(b), ECF No. 61. Byrnes also alleges that the form received by Chevron purporting to designate Anne Minvielle as beneficiary is void because the form itself was improper, or, alternatively, it was a forgery, or, alternatively, Broussard did not have the mental capacity or was unduly influenced by Anne Minvielle to sign it. *Id.* ¶¶ 35(d)-(g).

### B.   Procedural Background

After Chevron was unable determine whether Anne Minvielle or Byrnes was the proper beneficiary, it commenced this interpleader action on October 9, 2020. ECF No. 1. Chevron seeks, in part, a determination as to the proper beneficiary to any benefits owed with respect to

2

Broussard under the Plans, namely: 1) five annual installment payments owed under the RRP; 2) shares held in a Morgan Stanley account resulting from Broussard's January 2020 cashless exercise of 2,600 options; 3) outstanding LTIP option awards to Broussard; and 4) a cash payment resulting from the 2019 Performance Share Units payment held following Broussard's death. *Id.* at 8-9. On July 26, 2021, the Court discharged Chevron from this action. ECF No. 57. Byrnes and the Minvielles are the only remaining parties.

On June 3, 2021, the Minvielles filed a motion requesting the Court abstain and dismiss this proceeding or stay the proceeding pending determination of a probate case to determine allocation of Broussard's estate filed in Louisiana state court. ECF No. 49. Prior to commencement of this action, Leon Minvielle, as executor of Broussard's estate, had filed a Petition to Admit Notarial Testament to Probate and Confirmation of Independent Executor in Louisiana Civil District Court for the Parish of Orleans. ECF No. 49-6. On September 16, 2020, he filed with the Louisiana court a Petition for Possession and for Declaratory Judgment. ECF No. 49-9. The Petition for Possession and for Declaratory Judgment sought, in part, a declaratory judgment as to ownership of Broussard's Chevron benefits. ECF No. 49-9 at 5. On March 5, 2021, Byrnes filed an Answer to Petition for Possession and for Declaratory Judgment, Intervention and Reconventional Demand. ECF No. 49-10. Byrnes alleged in the Louisiana action that Broussard did not have the ability to obtain or prepare the beneficiary designation form at the time that of her alleged signature, and that the form's execution was an example of Anne Minvielle's undue influence. ECF No. 49-10 ¶ 47. Byrnes also alleged that the Louisiana court did not have jurisdiction to determine entitlement to Broussard's Chevron retirement benefits. ECF No. 49-10 ¶ 14.

On September 30, 2021, this Court ordered that the present action be stayed pending final disposition of the Louisiana suit. ECF No. 73. On July 28, 2023, the parties filed a consent judgment in the Louisiana action, agreeing that Broussard and Byrnes's post-nuptial agreement, dated January 19, 2017, was not an enforceable contract and did not constitute an agreement as to disposition of Byrnes and Broussard's assets. ECF No. 76, Ex. B.

On July 31, 2023, the Louisiana Civil District Court Parish of Orleans determined that it

did not have subject matter jurisdiction to determine claims related to Broussard's LTIP or RRP. ECF No. 76, Ex. A. The Louisiana court determined that it did have jurisdiction over money distributed from Broussard's Chevron Retirement Plan and Investment Plan. *Id.* Thus, on November 9, 2023, this Court granted Byrnes's motion to lift the stay. The Minvielles now move for transfer, arguing that the Western District of Louisiana "is by far the more convenient and economic venue for the trial of this matter."

### III. LEGAL STANDARD

A court may transfer an action to another district "where it might have been brought" "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) ("[S]ection 1404(a) requires two findings—that the district court is one where the action might have been brought and that the convenience of parties and witnesses in the interest of justice favor transfer.") (internal quotation marks omitted).

A motion for transfer lies within the broad discretion of the district court and must be determined on an individualized basis. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000). "Section 1404(a) requires the court to make a threshold determination of whether the case could have been brought where the transfer is sought. If venue is appropriate in the alternative venue, the court must weigh the convenience of the parties, the convenience of the witnesses, and the interest of justice." *State v. Bureau of Land Mgmt.*, 286 F. Supp. 3d 1054, 1059 (N.D. Cal. 2018) (citing 28 U.S.C. § 1404(a)). In analyzing convenience, the Court may consider:

> (1) plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum.

*Easton v. Wells Fargo & Co.*, 2020 WL 3639934, at *2 (N.D. Cal. July 6, 2020).

The burden is on the movant to demonstrate that jurisdiction and proper venue would exist in the district to which a transfer is requested and that the balance of conveniences favors transfer. *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Transfer is

4

not appropriate if it "merely shift[s] rather than eliminate[s] the inconvenience." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

## IV.     DISCUSSION

**A.     Whether the Action Could Have Been Brought in the Western District of Louisiana**

Complaints filed in interpleader may be filed in a "judicial district in which one or more of the claimants reside." 28 U.S.C. § 1397. There is no dispute that the Minvielles live in the Western District of Louisiana. Accordingly, the Court must weigh the convenience of the parties, the convenience of the witnesses, and the interest of justice.

**B.     Plaintiff's Choice of Forum**

Chevron alleged venue is proper in this District because it is the judicial district in which the RRP is administered and because Chevron is headquartered in this District and, therefore, a substantial part of property that is the subject of the action is situated here. Sec. Am. Compl. ¶¶ 15-16. "[G]reat weight is generally accorded plaintiff's choice of forum." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). At the same time, Chevron is no longer a party to this case, and neither Byrnes nor the Minvielles reside in this District. Accordingly, any deference owed to Chevron's choice of venue is substantially diminished.

**C.     Convenience**

**1.     Convenience of the Parties**

The Minvielles reside in New Iberia, Louisiana, which is within Louisiana's Western District. Mot. at 2. Clearly, that district is the more convenient forum for them. Byrnes argues he "does not have counsel in Louisiana briefed on the matters before this Court," and he "would likely need to identify and engage new local counsel in Louisiana with ERISA expertise, brief them from scratch[], and ask his current California counsel to seek *Pro Hac Vice* admission in Louisiana, unreasonably delaying resolution and causing Byrnes additional cost for no benefit." Opp'n at 5. At the same time, Byrnes resides in the South of France, and neither party has any affiliation with California. As such, the Court finds this factor slightly favors transfer.

**2.     Convenience of the Witnesses**

"The convenience of the witnesses, particularly non-party witnesses, is often the most

important factor" in ruling on a motion to transfer venue under § 1404(a). *Grossman v. Johnson & Johnson*, 2015 WL 1743116, at *1 (N.D. Cal. Apr. 13, 2015) (citing cases). To evaluate this factor, "courts must consider not only the number of witnesses, but also the nature and quality of their testimony." *United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*, 2019 WL 1024962, at *6 (N.D. Cal. Mar. 4, 2019) (quoting *Metz v. U.S. Life Ins. Co.*, 674 F. Supp. 2d 1141, 1147 (C.D. Cal. 2009)). When "establishing inconvenience to witnesses, the moving party must name the witnesses, state their location, and explain their testimony and its relevance." *Hendricks v. StarKist Co.*, 2014 WL 1245880, at *3 (N.D. Cal. Mar. 25, 2014) (quoting *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007)).

The Minvielles argue "the bulk of this case . . . will center around the fact-intensive issues raised by Mr. Byrnes as to alleged forgery, alleged incompetence and alleged undue influence." Mot. at 3. They note Byrnes (1) claims that Chevron's RRP requires spousal consent by Byrnes as a condition to Margaret having named her sister, Anne, as beneficiary of that plan; and (2) avers that the Chevron Beneficiary-Designation form that was produced by Chevron and accepted by Chevron after execution by Margaret is not the correct form under the Chevron Plans and therefore the designation is legally inoperative. *Id.* The Minvielles argue these issues will be determined by the Court based upon the language of the plan documents and, if any testimony from persons at Chevron is required, then that testimony can be taken by deposition. *Id.* ("Any such Chevron witnesses are not allied with either party, so deposition testimony, if needed, would do just fine."). The Minvielles also argue "Byrnes raises fact-intensive issues as to whether the Chevron Beneficiary-Designation form executed by Margaret Broussard is valid" because either it "was not signed by Margaret but rather is a forgery by Anne Minvielle" or "if the document was signed by Margaret, then Margaret did so while she was incompetent and/or while she was under undue influence by her sister, Anne." *Id.* (emphasis omitted). As to these issues, they argue "the critical timeframe will be the date that the Beneficiary-Designation form was executed (January 3, 2017) and the time proximate to that date both before and after that date," and that Margaret did not reside in California during the relevant period. *Id.* ("From early Spring of 2016 until January 2017, Margaret resided in London, England. In late January 2017, Margaret moved from London

1   to New Iberia, Louisiana where she resided until the latter part of 2018 when she rented a
2   condominium in New Orleans, Louisiana. Margaret died at her New Orleans residence on January
3   21, 2019."). As such, "[v]irtually all of the various witnesses who can give testimony concerning
4   Margaret's competence, whether she was under undue influence and whether her purported
5   signature is a forgery during that time frame are witnesses either in London, England or in south
6   Louisiana." *Id.* at 4.

7   Byrnes states he does not anticipate calling any witnesses from Louisiana, "because on and
8   around January 3, 2017, the date when the Received Form was purportedly signed, Broussard had
9   no ties to or connections with Louisiana that are relevant in this case, having not lived or worked
10  there in decades, since the 1980s." Opp'n at 6. Byrnes argues "Broussard's cognitive disfunction
11  which impacted her decision-making capacity on and around January 3, 2017, the purported date
12  of the form relevant to this case, was extensively investigated in California." *Id.* He therefore
13  intends to call witnesses from California, including from University of California San Francisco
14  Memory and Ageing Center and the Parkinson's Institute in Santa Clara, an independent forensic
15  psychiatrist to provide his expert opinion on Broussard's capacity and vulnerability to influence.
16  *Id.* at 7. He also intends to call the specialist doctors who cared for Broussard in London on and
17  around January 3, 2017, and who assessed her capacity in the period from September 2016 to
18  January 2017. *Id.*

19  Having considered the parties' arguments, the Court finds this factor weighs against
20  transfer. When "establishing inconvenience to witnesses, the moving party must name the
21  witnesses, state their location, and explain their testimony and its relevance." *Hendricks*, 2014
22  WL 1245880, at *3 (quoting *Costco*, 472 F. Supp. 2d at 1193). The Minvielles failed to do so
23  here, stating only generally that the relevant witnesses are either in London or Louisiana. In
24  contrast, Byrnes has named at least ten witnesses in California that he intends to call, which the
25  Minvielles attempt to brush aside by arguing "even a cursory examination of his California-listed
26  persons or entities shows that Byrnes will never really call any of them as live witnesses at the
27  trial." Mot. at 4. The Court finds it would be more procedurally proper to allow Byrnes to
28  express his own view about which witnesses he will choose to call in this case.

7

1    Further, although Chevron has been released from this case, it may still be required to
2 produce documentary evidence and provide testimony, including details of relevant benefit plans,
3 the nature of the impairments that made Broussard eligible for social security disability benefits
4 from October 2014 until her death, and the processing of the purported change of beneficiary
5 dated January 3, 2017.
6    Finally, there appears to be no dispute that at the time relevant to this case, specifically on
7 and around January 3, 2017, when the form purporting to change the beneficiary of Broussard's
8 plans is dated, she was in London. Relevant witnesses in London that can provide testimony
9 about her at that time will be equally inconvenienced by having to travel to California as
10 Louisiana, if they are required to travel at all.
11    Accordingly, the Minvielles have not met their burden to show that the convenience of
12 witnesses will be greater in Louisiana. This factor therefore weighs against transfer.

### D.   Remaining Factors

The remaining factors likewise fail to strongly favor transfer. Concerning ease of access to the evidence, relevant evidence is likely found in at least this District, London, and Louisiana. This factor is neutral. Further, given that the case concerns ERISA benefits, this Court is just as familiar with the relevant federal law as courts in the Western District of Louisiana.

The Court also notes Byrnes has filed another case in this District, which is also pending before the undersigned. *See Byrnes v. Chevron Corp.*, Case No. 3:21-cv-02686-TSH. While the two cases have not been officially related, the 2686 case seeks a determination as to whether Byrnes is the proper beneficiary of two other Chevron benefit plans held by Broussard. The 2686 case also involves claims of undue influence exerted by the Minvielles and claims with respect to Broussard's capacity to make legal decisions. The case is currently stayed pending resolution of the administrative process with respect to Byrnes's administrative claim under the two plans, but Byrnes states he intends to seek consolidation of the two cases after the pleadings are finalized. Opp'n at 9. If the two cases are related, transferring this case would create a duplication of labor and judicial resources if the actions were conducted in different venues before different judges.

### E. Interest of Justice

Finally, transfer to Louisiana does not serve the interests of justice.

> The "interests of justice" consideration is the most important factor a court must consider, and may be decisive in a transfer motion even when all other factors point the other way. A major consideration is the desire to avoid multiplicity of litigation from a single transaction. Indeed, in dictum, the Supreme Court has suggested that courts should give great weight to this consideration: "to permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent."

*Gerin v. Aegon USA, Inc.*, 2007 WL 1033472, at *6 (N.D. Cal. Apr. 4, 2007) (cleaned up). As this case and the 2686 case are already before this Court, and have been for some time, this Court is likely positioned to resolve the disputes faster than a new court. *See Pratt v. Rowland*, 769 F. Supp. 1128, 1133 (N.D. Cal. 1991) ("The Ninth Circuit has frequently held that a motion for transfer may properly be denied where, as here, a case has been pending for some time in the original court or where a transfer would lead to delay.") (citing *Allen v. Scribner*, 812 F.2d 426, 436-37 (9th Cir. 1987); *see also Commodity Futures Trading Comm'n*, 611 F.2d at 279 (affirming decision not to transfer, in part because "[t]he district court was familiar with the case and transfer may have led to delay.")).

In sum, the main factor weighing in favor of transfer is that the Western District of Louisiana would be more convenient for the Minvielles. However, the possible inconvenience the Minvielles may suffer by continuing to litigate this case in California is not sufficiently strong to overcome the interests of justice that weigh against transferring this case.

### V. CONCLUSION

For the reasons stated above, the Court **DENIES** the Minvielles' motion to transfer venue.

**IT IS SO ORDERED.**

Dated: February 9, 2024

THOMAS S. HIXSON
United States Magistrate Judge

9