UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAN ADMINISTRATOR OF THE CHEVRON CORPORATION RETIREMENT RESTORATION PLAN, et al.,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>ANNE MINVIELLE, et al.,<br><br>　　　　Defendants. | Case No. 20-cv-07063-TSH<br><br>**ORDER DENYING MOTION TO CONSOLIDATE**<br><br>Re: ECF No. 107 |
| MARTIN FRANCIS BYRNES,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CHEVRON CORPORATION, et al.,<br><br>　　　　Defendants. | Case No. 21-cv-02686-TSH<br><br>Re: ECF No. 32 |

## I.  INTRODUCTION

Two cases have been assigned to the undersigned magistrate judge: *Plan Administrator of the Chevron Retirement Restoration Plan et al. v. Anne Minvielle et al.; Martin Byrnes v. Anne Minvielle et al.*, Case No. 3:20-CV-07063-TSH, and *Martin Francis Byrnes v. Chevron Corporation et al.*, Case No. 3:21-CV-02686-TSH.  Martin Francis Byrnes, who is a defendant and the crossclaimant in 20-7063 and the plaintiff in 21-2686, moves the Court to consolidate the two cases pursuant to Federal Rule of Civil Procedure 42.  20-7063, ECF No. 107; 21-2686, ECF No. 32.[1]  Chevron Corporation, the Chevron Retirement Plan and the Chevron Employee Savings

---

[1] Although Byrnes filed this motion in both cases, subsequent briefing was filed only in 21-2686. Accordingly, unless otherwise indicated, all citations to the record refer to the docket in 21-2686.

1   Investment Plan (collectively, "Chevron Defendants") filed an opposition (ECF No. 38), but no
2   other parties filed a response.  Byrnes filed a reply.  ECF No. 41.  The Court held a hearing on
3   May 2, 2024.  Having considered the parties' positions, relevant legal authority, and the record in
4   this case, the Court **DENIES** the motion for the following reasons.

## II.   BACKGROUND

### A.   20-7063

Chevron Corporation commenced this interpleader action to determine the proper beneficiary of two Chevron benefit plans held by its former employee, Margaret Broussard.  20-7063, Sec. Am. Compl. ¶ 3, ECF No. 59.  Defendant Anne Minvielle, who was Broussard's sister, resides in Louisiana with her husband, Defendant Leon Minvielle.  *Id.* ¶¶ 6, 8.  Defendant Martin Byrnes, who was married to Broussard at certain times during her employment with Chevron, resides in France.  *Id.* ¶¶ 9-10.

Broussard died on January 21, 2019.  *Id.* ¶ 5.  During her work with Chevron, she earned a benefit under the Retirement Restoration Plan ("RRP").  *Id.* ¶ 17.  She also was awarded non-qualified stock options under the Long-Term Incentive Plan ("LTIP") (collectively, the "Plans").  *Id.* ¶ 20.  The Plans permit a participant to designate a beneficiary to receive outstanding benefits in the event of the participant's death.  *Id.* ¶¶ 30, 31.  On January 12, 2017, Chevron received a form purporting to name Anne Minvielle as the sole beneficiary.  *Id.* ¶ 35.  On March 17, 2017, Broussard also provided to Chevron a document represented as a post-nuptial agreement between Broussard and Byrnes, which included a division of Broussard's benefits under the Plan.  *Id.* ¶ 38.

Byrnes and Anne Minvielle both contend they are the rightful recipients of the benefits owed under the Plans.  Byrnes argues he is entitled to benefits as Broussard's surviving spouse.  Answer ¶ 35(b), 20-7063, ECF No. 61.  Byrnes also alleges that the form received by Chevron designating Anne Minvielle as beneficiary is void because either the form itself was improper, it was a forgery, or Broussard did not have the mental capacity or was unduly influenced by Anne Minvielle to sign it.  *Id.* ¶¶ 35(d)-(g).  Byrnes brings four claims:

1)  To Enforce His Rights Under the Terms of the Plan – ERISA § 502(a)(1)(B);

2)  Other Equitable Relief - ERISA § 502(a)(3);

2

1        3)   Declaratory Relief; and

2        4)   Improper Conveyance of Personal Property; Cal. Prob. Code §850.

*Id.* ¶¶ 119-27.

After Chevron was unable determine whether Anne Minvielle or Byrnes was the proper beneficiary, it commenced this interpleader action on October 9, 2020. 20-7063, ECF No. 1. Chevron sought a determination as to the proper beneficiary to any benefits owed with respect to Broussard under the Plans, namely: (1) five annual installment payments owed under the RRP; (2) shares held in a Morgan Stanley account resulting from Broussard's January 2020 cashless exercise of 2,600 options; (3) outstanding LTIP option awards to Broussard; and (4) a cash payment resulting from the 2019 Performance Share Units payment held following Broussard's death. *Id.* at 8-9. On July 26, 2021, the Court determined Chevron had established the grounds for interpleader and discharged it from this case. 20-7063, ECF No. 57. Byrnes and the Minvielles are the only remaining parties.

On September 30, 2021, the Court granted the Minvielles' motion to stay this case pending determination of a probate case pending in Louisiana state court regarding allocation of Broussard's estate. 20-7063, ECF No. 73. On November 9, 2023, the Court granted Byrnes's motion to lift the stay, as the Louisiana court determined that it did not have subject matter jurisdiction to determine claims related to Broussard's LTIP or RRP. 20-7063, ECF No. 86.

**B.   21-2686**

Byrnes filed the 21-2686 case on May 6, 2021, naming several defendants: Chevron Corporation, Chevron Corporation Retirement Plan, Chevron Corporation Employee Savings Investment Plan, Insight Wealth Strategies, Fidelity Management Trust Company, and Anne Minvielle.

The Chevron Corporation Retirement Plan ("RP"), a defined benefit pension benefit plan, and the Chevron Corporation Employee Savings Investment Plan ("ESIP"), a defined contribution pension benefit plan, are employee pension benefit plans that are administered by Chevron. First Am. Compl. ¶ 3, ECF No. 13. While she was an employee of Chevron, Broussard was a participant in both plans. *Id.* ¶ 9. As of Broussard's retirement date, the value of the benefits due

3

under the RP was approximately $1.9 million, and the value of the benefits due under the ESIP was approximately $3.1 million. *Id.* ¶ 11.

On or about May 17, 2017, Insight executed and filed documents on behalf of Broussard establishing a traditional Individual Retirement Account and a Roth Individual Retirement Account. *Id.* ¶ 12. Insight was the investment adviser and was conferred discretionary authority to manage and cause the distribution of assets from the IRAs. *Id.* Fidelity was made the custodian of the IRAs, and Minvielle was named the death beneficiary of the IRAs. *Id.*

Byrnes named Insight as a defendant "due to its fiduciary authority over the IRAs, which Byrnes contends below holds assets of the RP and the ESIP that constitute plan assets notwithstanding that they were previously distributed from those plans' trusts." *Id.* ¶ 13. Byrnes named Fidelity as a defendant "in its capacity as the custodian or trustee of the IRAs, and as a constructive trustee of the assets held in the IRAs for the benefit of Byrnes or the Plans." *Id.* ¶ 14. Byrnes named Minvielle as a defendant "in her capacity as the named death beneficiary of the IRAs and their current named holder, and as a competing claimant to the benefits that, in this action, Byrnes claims are properly payable to him." *Id.* ¶ 15.

On a date unknown but between May 18, 2017, and December 31, 2018, Chevron made a payment or payments into either or both IRAs which in total was equal to the entire value of Broussard's accrued benefits under the RP and ESIP combined, an amount of approximately $5 million. *Id.* ¶ 16. Byrnes claims to be entitled to either all the RP and ESIP benefits that were paid out to Broussard or to beneficial ownership of the IRAs. *Id.* ¶ 17.

Byrnes brings twelve claims in the 2686 case:

1) Failure to Pay Death Benefits Due Under the Plan – ERISA § 502(a)(1)(B) (Against the Chevron Corporation Retirement Plan Administrator and the RP);

2) Other Equitable Relief - ERISA § 502(a)(3) (Against the Chevron Corporation Retirement Plan Administrator, the RP, Minvielle and Fidelity);

3) Breach of Fiduciary Duty – ERISA § 409(a) (Against the Chevron Corporation Retirement Plan Administrator);

4) Failure to Pay Death Benefits Due Under the Plan – ERISA § 502(a)(1)(B) (Against

4

    the Employee Savings Investment Plan Administrator and the ESIP);

5) Other Equitable Relief - ERISA § 502(a)(3) (Against the Employee Savings Investment Plan Administrator, the ESIP, Minvielle and Fidelity);

6) Breach of Fiduciary Duty – ERISA § 409(a) (Against the Employee Savings Investment Plan Administrator);

7) Failure to Supply Requested Information - ERISA § 502(c) (Against Chevron as the Plan's Administrator);

8) Constructive Trust – Cal. Civ. Code § 2224 (Against Fidelity, Minvielle and Insight);

9) Lack of Capacity (Against Fidelity and Minvielle);

10) Negligence – Cal. Civ. Code § 1714 (Against Insight);

11) Improper Conveyance of Personal Property; Cal. Prob. Code § 850 (Against Minvielle); and

12) Wrongful Taking, Concealment or Disposition of Property; Cal. Prob. Code § 859 (Against Minvielle).

*Id.* ¶¶ 134-60.

  On July 9, 2021, the Court granted the parties' stipulation to stay this case pending the resolution of administrative claims filed by Byrnes with respect to the Chevron Corporation Retirement Plan and the Chevron Corporation Employee Savings Investment Plan. ECF No. 27. On March 22, 2024, the Court granted Byrnes's motion to lift the stay. ECF No. 34.

### III. LEGAL STANDARD

  "When actions involving a common question of law or fact are pending before the court, it . . . may order all the actions consolidated." Fed. R. Civ. P. 42(a). The "district court has broad discretion under this rule to consolidate cases pending in the same district." *Inv'rs Research Co. v. Dist. Court*, 877 F.2d 777, 777 (9th Cir. 1989). "In determining whether or not to consolidate cases, the Court should 'weigh the interest of judicial convenience against the potential for delay, confusion and prejudice.'" *Zhu v. UCBH Holdings, Inc.*, 682 F. Supp. 2d 1049, 1052 (N.D. Cal. 2010) (quoting *Sw. Marine, Inc. v. Triple A Machine Shop, Inc.*, 720 F. Supp. 805, 806–807 (N.D. Cal. 1989)). "The party seeking consolidation bears the burden of demonstrating that convenience

1  and judicial economy would result from consolidation." *Miller v. Ventro Corp.*, 2001 WL
2  34497752, at *3 (N.D. Cal. Nov. 28, 2001).

### IV.   DISCUSSION

Byrnes argues consolidation is appropriate because there are substantial common questions of both law and fact in both cases, it would reduce the possibility of scheduling conflicts and redundancies, would allow for simplified and streamlined discovery, witnesses would need to testify only once, and no party would be prejudiced.

**A.   The Cases Concern Different Facts and Issues**

The Court agrees that there are some factual and legal issues that overlap in these cases. Both involve the same former Chevron employee and both involve employee benefits. "The existence of common issues, however, does not compel consolidation." *Pac. Recovery Sols. v. Cigna Behav. Health, Inc.*, 2021 WL 577394, at *4 (N.D. Cal. Feb. 16, 2021) (citing *Dodaro v. Standard Pac. Corp.*, 2009 WL 10673229, at *3 (C.D. Cal. Nov. 16, 2009)). There are several reasons why consolidation appears to be improper in this case.

As noted above, the cases involve different plans, with the claims in 20-7063 focused on the LTIP and RRP, and the claims in 21-2686 focused on the RP and ESIP plans. Benefits under each plan are provided and governed by written documents with their own terms. Thus, to the extent that 20-7063 is decided based on the terms of the plan documents relevant there, those determinations are not relevant to 21-2686, and vice versa. As an example, in a recent status report, Byrnes and the Minvielles agreed that much of the RRP portion of 20-7063 can be resolved based on the Court's determination of a question of law regarding the effect of a particular amendment to the RRP. *See* 20-7063, ECF No. 108 at 11–12. The interpretation and impact of that amendment, however, has no bearing on any issue to be decided in 21-2686. According to the parties in 20-7063, much of the remainder of that action has to do with the effect of the beneficiary form received by Chevron on January 12, 2017. That form, which purports to name A. Minvielle as Broussard's RRP and LTIP beneficiary, appears to have no effect on the CRP or ESIP, and questions about its effect are irrelevant in 21-2686. Byrnes argues—and asserts a trial is necessary to resolve—that the January 2017 beneficiary form was the wrong form for use under the RRP and

6

LTIP, that it was a forgery, that it was obtained by undue influence, and/or that Broussard lacked capacity to execute it or submit it to Chevron at the time those actions allegedly occurred. Again, questions about the factual circumstances behind that form, and legal questions about the effect to be given to it under the RRP and LTIP, will not advance any issue that needs to be resolved in 21-2686 regarding the RP and ESIP plans.

Byrnes asserts that questions as to Broussard's competence and the Minvielles' alleged influence over her are common to both cases. Mot. at 6–7. However, while there may be questions related to competence and undue influence in both cases, the questions are not the same. The competence and undue influence questions in 20-7063 involve Broussard's competence to execute and submit the beneficiary designation form Chevron received in January 2017. In 21-2686, however, the competency questions relate to Broussard's election to receive distribution of her own benefits in June 2017. Evaluating Broussard's competency is a fact-based inquiry which appears to be complicated by allegations that her condition changed over time. Beyond asserting that the questions are common, Byrnes does nothing to show that questions around Broussard's competency to complete and submit a beneficiary designation in January 2017 would be common with questions as to her competency to take distribution of her own benefits several months later. That is, there is nothing to support the assertion that the same competence was necessary for both actions, or that a finding as to competence at one moment in time would govern competence at a later time.

In addition, while the questions in 20-7063 relate directly to whether Broussard was competent to execute the beneficiary designation form, questions about her competency do not bear as directly on the outcome of 21-2686. The question in 21-2686 is not just whether Broussard lacked capacity to make decisions regarding distribution of her benefits but also, if she did, whether the Chevron Defendants should be liable for failing to stop her from doing so because they allegedly knew she was incompetent. Thus, the issues will involve not just questions about Broussard's competency, but also issues about Chevron's knowledge of it, and the prudence of its actions in allowing her to take distribution of her benefits.

In short, while there is commonality in Byrnes's desired outcome to both litigations, and

1  some similarity in the nature of questions that will need to be decided in each, there are also

2  critical differences between the two cases that weigh against consolidation.  As such, the Court

3  declines to exercise its discretion to consolidate these two cases based on common questions of

4  law or fact alone.

**B.      Even if the Two Actions Involve Common Questions of Law and Fact, Consolidation Would be Inappropriate.**

Even if the Court were to find these two actions involved common questions of fact and law that support consolidation, this would not mandate consolidation.  The Court must still balance the savings of time and expense consolidation might produce against the delay, confusion or prejudice that would result from consolidation.  *Zhu*, 682 F. Supp. 2d at 1052.  This balancing process involves a review of a number of different factors, including whether the causes of action and facts in each action are similar, whether the complexity of the consolidated case will confuse the issues for resolution, whether trying the actions separately will involve an unneeded duplication of effort, whether consolidation will delay the trial of one or both of the actions, and whether consolidation would adversely affect the rights of any of the parties.  *Sw. Marine, Inc.*, 720 F. Supp. at 807 (finding that two actions involving different Navy contracts should not be consolidated because of the likelihood of delay and confusion where actions did not state the same causes of action, and facts necessary to prove claims were not in common).

**1.      Prejudice**

First, the Court finds consolidation could be prejudicial.  Consolidation should be denied where it "would likely increase the scope of trial" for the parties "litigating in one case but not the other."  *Curry v. Am. Standard*, 2010 WL 6501559, at *2 (S.D.N.Y. Dec. 13, 2010); *Garber v. Randell*, 477 F.2d 711, 713 (2d Cir. 1973) ("[W]here the claims against, or defenses of, some parties are substantially different from those of others, some may be prejudiced by consolidation . . . ."); *Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587, 592 (S.D.N.Y. 2012) ("Consolidation is inappropriate when it will adversely affect the rights of parties.").  Here, Byrnes proposes the Court consolidate the two actions in a manner that might carry some benefit to him and Anne Minvielle, but consolidation comes at the expense of dragging the Chevron Defendants,

1    Insight, and Fidelity into an action in which they do not have any interest.

2          There can be no reasonable dispute that consolidating the two actions will expand the
3    scope, burden, and expense of trial for the defendants in 21-2686 who are not parties in 20-7063.
4    But for consolidation, none of those parties would be directly involved in litigating that case.
5    And, as set forth above, the issues for trial in the two cases are different in several ways. As
6    Byrnes himself points out, "it would be unduly onerous to expect Insight or any other parties
7    except the Minvielles to plead to" issues raised in the 20-7063 case. Mot. at 10. While Byrnes
8    seeks consolidation, he also "propose[s] that the Court direct that the pleadings in each case
9    remain separate. We seek the direction of the Court as to how this will be implemented in
10   practice, what case numbers are to be used, etc." *Id.* However, if the two cases are consolidated
11   but maintain separate pleadings, the Chevron Defendants, Insight and Fidelity would need to
12   review filings to determine if any action is required on their part, something they would not need
13   to do if the cases remain separate.

14         Moreover, consolidation may force all defendants in both cases to participate in discovery
15   unrelated to their original case. *See Dodaro*, 2009 WL 10673229, at *5 (denying motion to
16   consolidation, in part because defendants argued that consolidation would force them to
17   participate in discovery unrelated to their case). For example, as Byrnes himself points out, while
18   "[b]oth cases involve claims of lack of mental capacity and undue influence, . . . the moment when
19   capacity and undue influence must be determined are different between the cases." Mot. at 7. If
20   the actions remain separate, however, the parties would participate in discovery related only to the
21   claims brought against them. *Id.*; *see also Pac. Recovery Sols.*, 2021 WL 577394, at *4
22   ("[A]lthough the two cases involve a number of the same legal claims, Pacific Recovery includes
23   much more expansive claims," which "may increase the scope of discovery and motion practice in
24   *Pacific Recovery* far beyond what is required for *Summit*."). Further, while the claims in 20-7063
25   and 21-2686 will likely rely on many of the same factual predicates, the two cases do not involve
26   identical parties. *See Pac. Recovery Sols.*, 2021 WL 577394, at *4 (consolidation inappropriate
27   where the parties were not identical and could lead to plaintiff being subject to discovery beyond
28   claims in their complaint). Thus, Byrnes's proposal that the parties present two separate cases

1  simultaneously at a single trial has the potential to be significantly more complex and burdensome,
2  and risks confusion of the issues in the two different cases. Instead, it makes sense to maintain
3  two separate cases, with each defendant being involved in matters pertaining only to the case in
4  which they are named. *See id.* (denying motion to consolidate, in part because party named in
5  only one case may face prejudice); *Dupont v. S. Pac. Co.*, 366 F.2d 193, 196 (5th Cir. 1966)
6  ("[T]he trial judge should be most cautious not to abuse his judicial discretion and to make sure
7  that the rights of the parties are not prejudiced by the order of consolidation under the facts and
8  circumstances of the particular case.").

### 2. Confusion

Consolidation is also inappropriate where it will result in confusion. *See e.g., Tumbling v. Merced Irrigation Dist.*, 2010 WL 1340546, at *3-4 (E.D. Cal. Apr. 1, 2010) (consolidation denied when it could result in confusion as to what evidence and testimony may be considered as proof of wrongful act as to each party and result in prejudice to the parties); *Applied Materials v. Advanced Semiconductor Materials Am.*, 1994 WL 17569 at * 14 (N.D. Cal. Apr. 19, 1994) (consolidation denied where it would require hearing and keeping separate testimony and evidence related to four different patents).

As is clear from even the initial pleadings, these cases involve nuanced issues under four different benefit plans, as well as alleged violations of both federal and state laws. Attempting to simultaneously resolve claims between different parties under the four different plans, based on varying language and different pieces of evidence, as well as different applicable laws, creates the needless potential for confusion of issues. These risks strongly counsel against consolidating the actions. *See Collins v. City & Cty. of San Francisco,* 2014 WL 5422177, at *3 (N.D. Cal. Oct. 24, 2014) (denying motion to consolidate because "[t]he facts, circumstances, witnesses and time periods supporting each Plaintiff's claims vary, and to combine discovery and trial in these three cases would lead to unnecessary confusion."); *Gonzales v. Podsakoff*, 2017 WL 2275028, at *2 (E.D. Cal. May 25, 2017), *report and recommendation adopted*, 2017 WL 3913163 (E.D. Cal. Sept. 7, 2017) ("Consolidation would . . . unnecessarily protract motions and trial by necessitating separate presentation of evidence and resolution of issues from both cases within a single, likely

1  unwieldy, order or verdict."); *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990)
2  ("Considerations of convenience and economy must yield to a paramount concern for a fair and
3  impartial trial.").

### 3. Consolidation Will Not Significantly Reduce the Judicial Resources Expended at Trial

The Court also finds that consolidating the two lawsuits will frustrate, rather than promote, judicial economy. Courts have refused to consolidate cases where consolidation would result in little or no savings of time and resources. *See Gross v. Town of Cicero*, 2005 WL 8167711, at *2 (N.D. Ill. Sept. 13, 2005) (denying motion to consolidate pursuant to Rule 42 because claims brought by each plaintiff would require several witnesses and involve legal issues irrelevant to the other plaintiff); *Klimaski v. Parexel Int'l*, 2005 WL 857350, at *5 (E.D. Pa. Apr. 4, 2005) (denying motion to consolidate because consolidation would "deflect the jury's attention from the merits of each individual plaintiff's claim" while "the varied nature of the evidence required to prove each party's case…[was unlikely to] significantly further convenience or economy").

Here, it appears that much of the relevant evidence in 20-7063 is irrelevant in 21-2686, and vice-versa. As such, consolidation may result in one long, drawn-out trial that will require presentation of the evidence in a convoluted fashion, between different parties at various points throughout. Keeping the two cases separate will facilitate more manageable trials, focusing on resolution of the beneficiary dispute as to the undistributed LTIP and RRP benefits in 20-7063, while resolving the more numerous claims related to the CRP and ESIP plans in 21-2686. The result will be distinct, efficient individual trials that will better protect the rights of all parties involved. *See Johnson v. Kerney*, 1993 WL 547466, at *6 (E.D.N.Y. Dec. 22, 1993) ("The potential confusion and prejudice . . . consolidation would create weigh[s] in favor of keeping these actions separate.").

Further, there is not a risk of inconsistent judgments. This is not a situation in which numerous actions have been filed against defendants in multiple jurisdictions. Both cases were filed in this District and were assigned to the same judge. Thus, for any issues that overlap, "[u]nder principles of stare decisis, the Court will be obligated to follow its legal rulings in the

11

1   first-filed case when it rules upon the second-filed case, thereby eliminating the danger of

2   inconsistent judgments." *Antoninetti v. Chipotle Mexican Grill, Inc.*, 2007 WL 2669531, at *3

3   (S.D. Cal. Sept. 7, 2007).

4       Finally, the Court notes that procedures short of consolidation can be used to effectively

5   manage these cases under Rule 42(a). For example, the Court could require the parties to meet

6   and confer throughout the proceedings to determine where discovery will overlap and where

7   discovery produced in one case could be used in the other. "If pretrial coordination does become

8   necessary at some point, it can be easily accomplished through the issuance of discrete joint orders

9   or the scheduling of joint hearings without the need for actual consolidation." *Collins*, 2014 WL

10   5422177, at *3. In addition, the Court would support a stipulation by the parties that the Court's

11   rulings on common legal issues would be binding across both cases. *See, e.g., Rosewolf v. Merck*

12   *& Co.*, 2022 WL 3214439, at *4 (N.D. Cal. Aug. 9, 2022). Using tools such as these,

13   consolidation would be unnecessary.

14       In sum, the Court finds the risk of prejudice associated with consolidation is meaningful,

15   and the potential benefits are limited.

### V.   CONCLUSION

Based on the analysis above, the Court **DENIES** Byrnes's motion to consolidate.

**IT IS SO ORDERED.**

Dated: May 3, 2024

THOMAS S. HIXSON
United States Magistrate Judge

12