CHARLES G. MILLER (SBN 39272)
*cmiller@bartkolaw.com*
BARTKO LLP
One Embarcadero Center, Suite 800
San Francisco, CA  94111
Telephone: (415) 956-1900
Facsimile: (415) 956-1152

WITHERS BERGMAN LLP
Jeremiah J. Moffit (SBN 229878)
Jeremy.Moffit@withersworldwide.com
101 West Broadway, Suite 1000
San Diego, CA  92101
Telephone: (619) 564-6131
Facsimile: (619) 923-8839

DAVID F. CRUTCHER (SBN 135407)
*david@crutcherlaw.com*
LAW OFFICE OF DAVID F. CRUTCHER
851 Irwin St., Ste. 221
San Rafael, CA  94901
Telephone: (415) 419-5120
Facsimile: (415) 419-5163

SESSIONS, FISHMAN & NATHAN, LLC
Jack M. Alltmont (admitted *pro hac vice*)
jalltmont@sessions-law.com
400 Poydras Street, Suite 2550
New Orleans, LA  70130
Telephone: (504) 582-1507
Facsimile: (504) 582-1555

Attorneys for Defendant and Crossclaimant
MARTIN BYRNES

Attorneys for Defendants and Crossdefendants,
ANNE MINVIELLE and LEON MINVIELLE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAN ADMINISTRATOR OF THE CHEVRON CORPORATION RETIREMENT RESTORATION PLAN and PLAN ADMINISTRATOR OF THE CHEVRON CORPORATION LONG-TERM INCENTIVE PLAN,<br><br>        Plaintiffs,<br><br>    v.<br><br>ANNE MINVIELLE, MARTIN BYRNES and LEON MINVIELLE as the Executor of the Estate of Margaret Broussard,<br><br>        Defendants.<br><br>MARTIN BYRNES,<br><br>        Crossclaimant,<br><br>    v.<br><br>ANNE MINVIELLE and LEON MINVIELLE as Executor of the Estate of Margaret Broussard,<br><br>        Crossdefendants. | Case No. 3:20-cv-07063-TSH<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Date:    June 13, 2024<br>Time:    10:00 a.m.<br>Judge:  The Hon. Thomas S. Hixson<br>Place:  Courtroom E, 15th Floor<br>        450 Golden Gate Avenue<br>        San Francisco, CA |

1   Defendant/Crossclaimant Martin Byrnes ("Byrnes") and Defendants/Crossdefendants

2   Anne Minvielle ("A. Minvielle") and Leon Minvielle as the Executor of the Estate of Margaret

3   Broussard ("L. Minvielle") (A. Minvielle and L. Minvielle collectively, the "Minvielles") hereby

4   submit this Joint Case Management Statement pursuant to Civil Local Rule 16-9:

5   **1.   Procedural Matters**

6   This case was originally brought on October 9, 2020, as an interpleader action under Fed.

7   R. Civ. P. 22 by the plan administrator of the Chevron Corporation Retirement Restoration Plan

8   and the plan administrator of the Long-Term Incentive Plan of Chevron Corporation (the

9   "Plaintiffs") (Dkt. 1) seeking to resolve the proper beneficiary of benefits owed as a result of the

10   participation of Margaret Broussard in the Chevron Retirement Restoration Plan (the "RRP") and

11   the Long-Term Incentive Plan of Chevron Corporation (the "LTIP") (together with the RRP, the

12   "Plans").  Broussard, a former employee of Chevron who died on January 21, 2019, earned

13   benefits under the Plans during her employment with Chevron.  Some of those benefits were

14   outstanding at the time of or payable after her death.

15   The original Complaint was brought against Byrnes and A. Minvielle.  Byrnes filed an

16   answer to the Complaint, and a Counterclaim which joined L. Minvielle, on January 7, 2021.  A.

17   Minvielle did not answer the Complaint or the Counterclaim.  L. Minvielle did not answer the

18   Counterclaim.  The Plaintiffs filed an amended interpleader complaint on March 3, 2021, and

19   sought an order from the Court that the requirements of interpleader had been established, and that

20   the Plaintiffs should be discharged from the case.  (Dkt. 34.)

21   By order dated July 26, 2021, the Court determined that the requirements for an

22   interpleader action had been satisfied and further ordered the Plaintiffs be discharged from the

23   case, leaving Byrnes and the Minvielles as the remaining parties.  (Dkt. 57.)  At the request of the

24   Plaintiffs, the Court also ordered the Plaintiffs to file a Second Amended Complaint (the "SAC"),

25   which they did on July 30, 2021.  (Dkt. 59.)  The SAC joined L. Minvielle, who was a party to an

26   escrow agreement relating to the benefits under the Plans, as a defendant to the SAC.

27   Byrnes subsequently filed an amended answer to the SAC and a crossclaim against the

28   Minvielles claiming entitlement to benefits due under the Plans, on August 13, 2021.  (Dkt. 61.)

1   Neither L. Minvielle nor A. Minvielle has answered the SAC or Byrnes' crossclaim.

2        The Minvielles claimed that the subject matter of this action, determination of the proper

3   beneficiary of the non-probate assets provided as benefits under the Plans, was already before a

4   state court in Louisiana, in a succession proceeding brought by the Minvielles and another person

5   seeking to prove a will, the validity of which is challenged in the Louisiana succession proceeding.

6   This case was stayed by order of the Court on September 30, 2021, pending the Louisiana state

7   court determining its jurisdiction in respect of the Plans that are the subject of this case.  (Dkt. 73.)

8   The stay was lifted on November 9, 2023, following the Louisiana state court's determination that

9   it lacked subject matter jurisdiction over the two plans that are before this Court in this case.  (Dkt.

10  86.)

11       All Defendants have been served or accepted service of the Complaint.

12       Service of Byrnes' Crossclaim has been completed as to all Crossdefendants.

13       The Minvielles have not filed any responsive pleading.  (Note that counsel for Byrnes has

14  previously stated their intention to file an amended Answer and Crossclaim and has agreed that it

15  would make no sense for the Minvielles to file answer to the original crossclaim until that

16  crossclaim is supplemented and amended as Byrnes has stated to be his intention.  As of this date,

17  Byrnes has not supplemented and amended his answer or crossclaim.)

18       For his part, Byrnes intends to file his Amended Answer and Crossclaim at or about the

19  same time as the filing of this Case Management Statement.

20       Byrnes filed a motion in this case to consolidate this case with the related case already

21  before the same judge (3:21-cv-02686-TSH).  (Dkt. 95.)  (See Item 11 below.)  That motion was

22  denied by the Court on May 3, 2024.

23       **2.**    <u>**Jurisdiction**</u>

24       The Court has subject matter jurisdiction over the complaint because the parties are diverse

25  and the amount in controversy — the outstanding benefits owed under the Plans — exceeds

26  $75,000, exclusive of interest and costs.  The Court further has subject matter jurisdiction over the

27  portions of the action related to the RRP because the RRP is subject to ERISA, a federal statute,

28  and therefore claims concerning it present federal questions.  The Court further has exclusive

jurisdiction over the Plaintiffs' interpleader claim related to the RRP (and the responses to it) pursuant to ERISA § 502(e) because that interpleader claim and the responses are equitable relief pursuant to ERISA § 502(a)(3).

There is no dispute as to this Court's subject matter jurisdiction over the matters asserted in the complaint.

**3.**   **Facts**

The RRP, which provides deferred retirement compensation, was due to commence payment in January 2024.  Approximately $1.55 million is payable under the RRP over a five (5) year period.  The RRP payments are being held back by Chevron pending resolution of the proper beneficiary.

The LTIP is an equity compensation (non-pension) plan that awards certain stock options generally exercisable over a ten-year period following the date of the award.  Retirement or death does not affect the ten-year exercise period.  Seven (7) tranches of unexercised LTIP stock options were held by Broussard at the time of her death.  The 10-year exercise periods for these seven tranches expire serially from 2020 through 2026.  Five (5) of the tranches have been exercised by agreement and the proceeds are held in escrow in a non-interest-bearing account pending resolution of ownership.  The parties agreed to allow one (1) tranche to lapse, as its exercise price exceeded the price of the shares.  One tranche of 13,800 shares remains unexercised with an expiration date of January 27, 2026.

Separately, a cash amount owing to Broussard in respect of Performance Shares / PSUs issued under the LTIP, was also outstanding at her death.  The cash amount attributable to Performance Shares / PSUs has been held back by Chevron pending resolution of ownership.

**A.**   **Facts As Stated by Byrnes**

Byrnes contends that at all times he was the beneficiary of the Plans pursuant to their express terms.  On January 12, 2017, Chevron received a form (the "Received Form") dated January 3, 2017, purporting to name A. Minvielle as the beneficiary under the Plans.

Following Broussard's death, Byrnes notified Chevron that he claimed all Broussard's benefits under the Plans pursuant to the terms of each plan and applicable federal common law and

1    California state law.  Byrnes asserts that the Received Form is ineffective.

2    **B.      Facts As Stated by the Minvielles**

3              As far as we can determine, Margaret Broussard ("Margaret") never named Byrnes as

4    beneficiary of any of her Chevron benefit plans.  But in any case on January 3, 2017 Margaret

5    executed and sent to Chevron a fully-executed Beneficiary Designation Form which covered both

6    the RRP and the LTP.  In that executed form, Margaret named her sister, Anne Minvielle, as the

7    beneficiary of those plans upon Margaret's death.  Said beneficiary designation is proper both as

8    to form and substance and accordingly Anne Minvielle is the beneficiary of both of those plans.

9    Moreover, insofar as Byrnes alleges an entitlement to the benefits of these plans, the Minvielles

10   further note that Byrnes and Margaret executed a pre-nuptial agreement shortly before their 2002

11   marriage.[1]  In that agreement, each party disclaimed any claim to any assets of the other arising

12   from the marriage.  Also the Minvielles point out that Byrnes and Margaret were divorced prior to

13   Margaret's death.[2]

14             In summary, Margaret named Anne Minvielle as her beneficiary and Byrnes has no valid

15   claim as to the benefits of those plans.

16        **4.      <u>Legal Issues</u>**

17   **A.      As Stated by Byrnes**

18            Byrnes contends:

19            (i)      The Received Form is a forgery;

20            (ii)     If the Received Form was signed by Broussard, she lacked requisite mental

21                     capacity to change her beneficiary at the time it was purportedly executed;

22            (iii)    If the Received Form was signed by Broussard, she was unduly influenced by the

23                     Minvielles to do so;

24            (iv)     The Received Form was not the correct form required under the terms of the Plans

25

26   _____

27   [1] In his deposition, Byrnes denies the Premarital Agreement.  But the overwhelming evidence will prove that Mr. Byrnes has a convenient and selective memory.

28   [2] This point is denied by Byrnes.  Whether the marriage was terminated in 2017 is an issue before the Louisiana court on a Motion for Summary Judgment filed therein by Chevron.

1  at the time, and so under the terms of the Plans the purported designation is invalid;

2  and

3  (v)  Under the terms of the RRP, as amended effective two days before the date of

4  Broussard's purported execution of the Received Form, notarized spousal consent

5  was required to designate a person other than the spouse as beneficiary, and

6  notarized spousal consent was not provided.

7  **B.  As Stated by the Minvielles**

8  The Minvielles deny that Byrnes was ever the beneficiary of the Plans by virtue of his

being the spouse of Margaret. The Minvielles claim that prior to their marriage in 2002, Byrnes

and Margaret executed a Premarital Agreement whereby each disclaimed any interest in the assets

of the other that might arise from the marriage, and they further stated that there would be no

community property between them. The Minvielles are aware of no documentation filed by

Margaret with Chevron that would have made Byrnes the beneficiary of these Plans.[3]

14  The Minvielles deny Byrnes' allegations that the beneficiary designation signed by

Margaret was a forgery, deny Byrnes' allegation that Margaret signed said beneficiary designation

while she lacked mental capacity or while she was under undue influence. The Minvielles further

deny Byrnes' allegations that the form does not meet the procedural requirements for beneficiary

designation and point out that the form was provided by Chevron and accepted by Chevron after

execution by Margaret.  The Minvielles further deny that a change of beneficiary regarding the

RRP requires spousal consent.

21  **5.  Motions**

22  There are no motions pending in this action.

23  **6.  Amendment of Pleadings**

24  Byrnes will amend his Answer and Crossclaim in this case pursuant to Fed. R. Civ. P. 15,

at or about the time this Case Management Statement is filed, to incorporate developments since

---

[3] For his part, Byrnes denies that the claimed premarital agreement was ever entered into, denies that the document is capable of being a valid premarital agreement under California law, and denies the interpretation that the Minvielles put on the document they claim was a premarital agreement.

those pleadings were filed, including facts indirectly discovered in the Louisiana succession proceeding and in the administrative review of Byrnes' claims for benefits under two other Chevron plans in which Broussard participated through her employment, in the absence of the Minvielles filing any substantive responsive pleadings in this case.  Anne's response will be filed ASAP and shortly.

**7.      Evidence Preservation**

All parties have reviewed the ESI Guidelines regarding the preservation of evidence relevant to the issues in this action.  The parties agree to comply with their respective obligations to preserve and maintain such evidence, including, without limitation, electronically stored information.

**8.      Disclosures**

The parties have not yet made any disclosures pursuant to Fed. R. Civ. P. 26.  Dates for the exchange of such disclosures will be proposed following the close of pleadings.

**9.      Discovery**

**A.      As Stated by Byrnes**

Some discovery has been given to date in this case, though additional discovery is still required.  Byrnes propounded to the Minvielles a Request for Production of Documents on April 25, 2024, to which a partial response has been answered and the remainder expected to be answered no later than June 8, 2024.

**B.      As Stated by the Minvielles**

Leon Minvielle has fully responded to the Documents Request propounded by Byrnes on April 25, 2024.  Byrnes' separate Request for Production to Anne Minvielle largely mimics that propounded to Leon Minvielle.  Anne's response will be filed no later than June 8, 2024.

**10.     Class Action**

Not applicable.

**11.     Related Cases**

**A.      As Stated by Byrnes**

Byrnes filed an ERISA action in this Court on April 14, 2021, seeking benefits under two

other Chevron-sponsored benefit plans.  (See 3:21-cv-02686-TSH, hereafter the "02686 case"; Dkt. 1.)  This is a related case within the meaning of the Federal Rules of Civil Procedure.  The 02686 case was stayed by the Court on July 9, 2021, pending the outcome of the administrative process to determine Byrnes' entitlement to benefits under the two plans that are the subject of that action.  (*Id.,* Dkt. 27.)  That administrative process is complete, and the stay was lifted by this Court on March 22, 2024 (Dkt. 34).

The Court is aware of another case, a contested probate of Broussard's estate which is currently pending in the Civil District Court for the Parish of Orleans, State of Louisiana, Case No. 2019-1076 (the "Louisiana succession proceeding").  This case is not "related" within the meaning of the Federal Rules of Civil Procedure, but is part of the overall dispute between Byrnes and the Minvielles.  In that case the Minvielles have tried to seek the adjudication of non-probate matters properly before this Court. The Louisiana state court has ordered it does not have jurisdiction over the plans that are the subject matter of this action.  That state court has not maintained any jurisdiction over the plans in the 02686 case, and cannot have jurisdiction over the primary claims of Byrnes in the 02686 case which are subject to exclusive federal jurisdiction.

**B.     As Stated by the Minvielles**

Related Case No. 3:21-cv-02686 (hereinafter "02686") pertains to Margaret's Chevron Retirement Plan ("RP") and her ESIP (a 401(k) plan to which she contributed).

Byrnes did file an administrative claim with Chevron regarding these two plans.  The Chevron administrators have apparently denied Byrnes' claim under the ESIP (the 401(k) plan) but the Chevron administrator granted Byrnes' claim to a 50% survivor annuity under the RP stating that Byrnes would be entitled to receive monthly benefits from that annuity starting in 2046.  The administrator further stated that it would reconsider Byrnes' annuity entitlement if the Chevron administrator is able to recover the lump sum benefit paid to Margaret per her instructions to Chevron in June 2017.

The administrative proceeding is incomplete because Anne Minvielle filed an objection to the decision that Byrnes is entitled to anything.  Chevron has never responded to Minvielle's objection and has also never responded to Minvielle's request for the administrative file.

Therefore, the administrative proceeding is clearly not complete as of this date.  In the Louisiana proceeding, the Louisiana court has retained jurisdiction over the assets from both the RP and the ESIP plans.  Those assets are currently frozen in the private IRA plans where those funds were placed by Margaret with her financial advisor Insight.  Fidelity is the actual custodian.  Margaret designated Anne Minvielle as beneficiary on these IRAs.  Pending in the Louisiana case is an action by the Chevron administrator seeking to recover the lump sum that it paid to Margaret regarding the RP.  Chevron has made no claim to recover the lump sum paid to Margaret under the ESIP.

### 12. Relief

This action calls for declaratory relief identifying the proper beneficiary for the interpleaded benefits, along with such equitable relief that the Court deems appropriate.

### 13. Settlement and ADR

**A.    As Stated by Byrnes**

The parties have had limited discussions concerning settlement, and have discussed ADR. The parties have agreed to pursue Early Neutral Evaluation as a method of ADR once pleadings have closed.

**B.    As Stated by the Minvielles**

Since Spring 2019, Minvielles, through counsel, have attempted to convoke settlement negotiations with Byrnes, through his various counsel.  While Byrnes' counsel have agreed that mediation would seem appropriate, Byrnes has never agreed to actually negotiate until the last couple of months, and the parties have now stipulated to ADR under the Court's ADR Local Rules.  But Byrnes now states that he cannot commence any negotiations until further pleadings are filed and more discovery is taken.

The Minvielles remain willing to enter into settlement negotiations, Early Neutral Evaluation and/or mediation without further significant delay.

### 14. Consent to Have a Magistrate Judge Hear the Case

The parties have consented to assignment of this matter to a Magistrate Judge for all purposes.

**15.** **Other References**

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**16.** **Narrowing of Issues**

**A.** **January 1, 2017, Amendment to the RRP**

One issue raised by Byrnes is purely a question of legal interpretation of the RRP and could readily be addressed by the Court following a briefing.  Byrnes contends that a determination of the issue in his favor would be dispositive of the RRP claim.  That issue concerns the interpretation of an amendment made to the RRP effective on January 1, 2017, and whether its terms imposed a spousal consent requirement for a beneficiary change.  No spousal consent was given to Broussard's purported change in beneficiary, and Byrnes contends that as a consequence Broussard's purported designation of A. Minvielle was invalid because Byrnes did not consent to it.

A. Minvielle contends that the amendment did not impose a spousal consent requirement.

The parties propose that this question be resolved by motion and determined by the Court at an early date.

Byrnes states that oral argument is not necessary, and the question can be determined on the papers.

The Minvielles state that oral argument is needed and should be had.  Minvielles further state that we may need to obtain discovery from Chevron regarding the amendment.

**B.** **Byrnes' Forgery Claim regarding the received Beneficiary Form dated January 3, 2017**

**As Stated by the Minvielles**

Byrnes claims that the form is a forgery, but if it is not a forgery, then it was executed by Margaret while she was incompetent and/or under undue influence.

The Minvielles contend that the form was actually signed by Margaret of her own free will while she was in London, England still under Byrnes' control while the Minvielles were in Louisiana.

Minvielles state that Byrnes' forgery claim is something of a threshold issue that can and should be handled at an early point in this litigation rather than being deferred to the trial on the merits. As stated below in the Scheduling portion of this Statement, Minvielles ask that Byrnes be required to identify any expert he has on forgery and present the full report of any such expert at an early date. Thereafter (and only thereafter), can Minvielles decide whether they want to engage an "expert" on forgery. Then, if the Court rules that Byrnes has not proven forgery, that threshold issue will be decided and will not require any further work by either counsel or by the Court.

**As Stated by Byrnes**

Byrnes contends that the forgery issue does not necessarily require the evidence of or a report from a handwriting expert, and that the forgery claim will be determined primarily on the basis that it was physically impossible for Broussard to have signed the document because she was in London at the relevant time, the form was sent by Chevron to Broussard at her California address, that mail was diverted to the Minvielles' address by the Minvielles, and returned from Louisiana to Chevron, all within a timeframe suggesting that the document could not have been send to Broussard in London.  Evidence provided by Chevron will be the primary evidence on this issue. However, this requires the discovery process to be completed. Perhaps at that point this issue could then be raised as a preliminary issue.

The Minvielles deny Byrnes' contentions set forth in the immediately-preceding paragraph.


**C.     Other Issues Which May Arise from Pleadings**

**As Stated by Byrnes**

The Minvielles have foreshadowed (in this Case Management Statement, and elsewhere) raising new issues, although they have yet to file any pleadings.  These new issues include an alleged premarital agreement, and an assertion that Byrnes and Broussard were divorced.  If raised in the pleadings, they are amenable to narrowing.  Otherwise, Byrnes cannot speculate as to whether issues that may be raised by the Minvielles which are not already raised in this case may be suitable for early narrowing or resolution.

**As Stated by the Minvielles**

The Minvielles indeed will produce and plead the pre-marital agreement between Byrnes and Margaret and will show that they were legally divorced.  As to pleading these points, we refer back to our prior statement herein that Byrnes has stated an intention to supplement and amend his crossclaim and that it would make no sense for the Minvielles to plead until that supplemental and amended complaint is filed.  Hence, we will plead fully on these and any other issues after we receive Byrnes' promised supplemental and amended pleading.

### 17.   Expedited Trial Procedure

The parties agree that this matter cannot be handled under the Expedited Trial Procedure in General Order 64.

The Minvielles agree that Byrnes' claim that spousal consent is required under the RRP is a question of legal interpretation of the RRP that can be decided upon a motion and that it should be decided early in the litigation.

The Minvielles state that Byrnes' attempt to impose spousal consent based upon the January 1, 2017, amendment to the RRP is wrong as a matter of law.  Byrnes' proffered interpretation of the amendment is simply incorrect and untenable.

### 18.   Scheduling

**A.    Byrnes proposes the following in respect of the schedule:**

Since Byrnes has stated an intent to supplement and amend his pleadings and since accordingly the Minvielles have not yet filed any pleadings in this case, it is premature to make any determination in respect of the schedule.  Consideration of scheduling should await the close of pleadings.

**B.    The Minvielles propose the following in relation to the schedule:**

The Minvielles agree with the scheduling comment by Byrnes which is stated immediately above.

### 19.   Trial

If trial is necessary in this matter, the parties anticipate a five-day bench trial.  Neither party demands a jury trial.

**20.**     <u>**Disclosure of Non-Party Interested Entities or Persons**</u>

The Plaintiffs disclosed Chevron Corporation, the corporate parent of the Chevron Group, as an Interested Entity.  Notwithstanding the release of the Plaintiffs, Chevron Corporation remains an Interested Entity, as it is the person which is liable to make payments under the RRP and the LTIP in accordance with the decision of this Court.

In related Case No. 02686, Byrnes has asserted claims against Chevron, Insight and Fidelity.  Those parties may have an interest in this case as well.


DATED: June 6, 2024                           Respectfully submitted,

                                              BARTKO LLP

                                              LAW OFFICE OF DAVID F. CRUTCHER


                                              By:  */s/ Charles G. Miller*
                                              Charles G. Miller
                                              David C. Crutcher
                                              Attorneys for Martin Byrnes

DATED: June 6, 2024                           Respectfully submitted,

                                              WITHERS BERGMAN LLP

                                              SESSIONS, FISHMAN & NATHAN, LLC


                                              By:  */s/ Jack M. Alltmont*
                                              Jeremiah J. Moffit
                                              Jack M. Alltmont
                                              Attorneys for Defendants and Defendants-in-
                                              Counterclaim, Anne Minvielle And Leon
                                              Minvielle

**ATTESTATION OF SIGNATURES**

I, Charles G. Miller, hereby attest, pursuant to Local Civil Rule 5-1(i)(3) of the United States District Court for the Northern District of California, that concurrence in the filing of this document has been obtained from each signatory hereto.

                              */s/ Charles G. Miller*
                              Charles G. Miller